CRUMPACKER ET AL. *v*. HOWES ET AL.

[No. 19,800. Filed December 23, 1966.]

*Owen W. Crumpacker, George V. Burbach, John Ruge, Thomas T. Crumpacker,* all of Hammond, for appellants.

*Wasson J. Wilson* and *Richard F. Benne,* both of Hammond, and *George W. Douglas,* of Valparaiso, and *Bomberger, Wilson & Belshaw,* of Hammond, and *Douglas, Douglas & Douglas,* of Valparaiso, of counsel, for appellees.

HUNTER, J.—This is an appeal from a judgment in the court below upon a suit to quiet title to eighty-three and one-half (83½) acres of unimproved land in northern Porter County, Indiana, located approximately one-half (½) mile south of Lake Michigan.

The sole error assigned for reversal in this cause is that the trial court erred in overruling motion of plaintiffs and cross-defendants (appellants) for new trial. Grounds of appellants' motion for new trial are:

(1) The finding of the court is not sustained by sufficient evidence.
(2) The finding of the court is contrary to law.
(3) The decision of the court is not sustained by sufficient evidence.
(4) The decision of the court is contrary to law.

The appellants assert in their complaint that the defendants in such action (appellees herein) assert some right, title and interest in the real estate in question by virtue of a purported administrator's sale and deed from one Englebert Zimmerman, Jr. as administrator of the Estate of Edgar D. Crumpacker, deceased, in the Porter Superior Court to Edgar B. Howes, Leonard N. Conklin, Ormand C. Julian, James W.

Halley, Thomas S. Washburn, and Oliver Starr, dated March 9, 1956, and recorded in the recorder's office of Porter County, Indiana, which the appellants in their complaint allege was illegal, null and void, and of no force and effect, and insufficient to convey any right, title, or interest either equitable to the (defendants in the court below) appellees herein. The appellees herein are the original grantees in such above mentioned administrator's deed and their successor, Dune Woodlands, Inc.

The appellees (defendants below) filed an answer and a cross-complaint asking a judgment quieting title in them to said real estate. The court found against the (plaintiffs) appellants herein and for the appellee, Dune Woodlands, Inc., on its cross-complaint and against the (plaintiffs) cross defendants, and entered judgment on such findings. From this judgment, the plaintiffs and cross defendants (plaintiffs) prosecuted this appeal, assigning as error the overruling of appellants' and cross defendants' (plaintiffs below) motion for new trial, and that the finding and decision of the court is not sustained by sufficient evidence and is contrary to law.

Edgar D. Crumpacker died in 1920 the owner of forty (40) acres of land in the N. W. $\frac{1}{4}$ of Sec. 22, Twp. 37 N., R. 6 West, and an undivided one-half of one hundred twenty (120) acres of land in the N. E. $\frac{1}{4}$ of Sec. 22, Twp. 37 N., R. 6 West, all in Porter County, Indiana. The other undivided one-half of the aforementioned 120 acres was owned by Charles I. Crumpacker, a brother of the said Edgar D. Crumpacker. Edgar D. Crumpacker by will devised his real estate to his wife, Charlotte A. Crumpacker, for life, and at her death to his three sons, Owen W., Frederick C., and Maurice E. Crumpacker in equal shares.

Edgar D. Crumpacker's widow, Charlotte A. Crumpacker, duly qualified as the executrix under his will and continued to act as such executrix until her death on June 5, 1925. Such estate of Edgar D. Crumpacker remained open and without

any substituted personal representative until August 13, 1932, on which date one J. E. Ohlfest was appointed administrator *de bonis non* with the will annexed. One of the three sons, remainderman in the estate of Edgar D. Crumpacker, Maurice E. Crumpacker, died prior to January 4, 1934, leaving surviving as his sole and only heirs at law, his widow Cully A. Crumpacker, and his three minor sons, James Crumpacker, Edgar D. Crumpacker and Peter Crumpacker, who are appellants, *inter alia,* herein.

The undivided one-half interest of the aforesaid Charles I. Crumpacker in and to the 120 acre tract in the N. E. ¼ of Section 22 after his death was conveyed on April 4, 1944, to William C. Tackett, who instituted partition proceedings in the Circuit Court of Porter County, Indiana, as a result of which 54 acres of the original 120 acres was set off one-half to Cully A. Crumpacker and her three children, James, Edgar and Peter Crumpacker, and one-half to Frederick C. Crumpacker, son and residuary devisee of the aforementioned Edgar D. Crumpacker. Later, of the 54 acres set off in such partition proceeding ten and one-half (10½) acres were sold or conveyed, leaving 43½ acres of the fifty-four (54) acres set off on June 21, 1946, in the aforementioned partition suit. The aforementioned forty (40) acres in the Northwest quarter of said Section 22 and the remaining forty-three and one-half (43½) acres of the original undivided half of interest in said 120 acres of the northeast quarter of said Section 22, comprise the eighty-three and one-half acres of land which are the subject of the present action to quiet title.

On October 7, 1946, letters of administration on the estate of said Edgar D. Crumpacker, who died in May, 1920, as aforesaid, were issued to one Englebert Zimmerman, Jr. On February 6, 1947, said Englebert Zimmerman, Jr., as such administrator filed his final report in the estate of said decedent. In his final report said administrator reported and represented to the court that:

## "FINAL REPORT

Comes now Englebert Zimmerman, Jr., and represents to the court that J. E. Ohlfest, formerly administrator de bonis non under the will of Edgar D. Crumpacker, deceased, did, on the 4th day of October, 1946, file his final report and resign as such administrator, whereupon this administrator on October 7th, 1946 was appointed and duly qualified as his successor.

The final report of the said Ohlfest discloses that he had the sum of $6665.89 in his hands as such administrator at the time he resigned. This administrator has received said fund and is accountable therefor. As stated in the final report of the said Ohlfest Administrator, an action is pending for the sale of real estate owned by the deceased to pay debts and claims of the estate, and on an appeal to the Appellate Court of Indiana respecting the sale of a forty acre parcel of land owned by the deceased, and in which appeal a question is being raised as to the validity of a sale to one I. D. Rosenberg, and the validity of a bid by one Leo Johnston for the same property. Further, as stated in the final report of the said Ohlfest, $3500.00 of the funds now in this administrator's hands are to be refunded to the unsuccessful party to said litigation, in consequence of which out of the total cash balance now in this administrator's hands, the amount of $3500.00 is in reality in the nature of an escrow or trust account and not properly an asset of this estate, but is being held by the administrator pending the decision of the Appellate Court.

The Administrator further reports that the deceased died testate in May, 1920, and that his will was duly admitted to probate in this court and letters testamentary issued to his widow, Charlotte A. Crumpacker, on the 27th day of May, 1920. Subsequently and on June 5th, 1926, the said Charlotte A. Crumpacker died and this estate continued without an administrator until the 13th day of August, 1932, when the said J. E. Ohlfest was appointed and qualified as Administrator de bonis non with the will annexed.

The Administrator further represents that all claims that have been filed in this estate have been adjusted and paid except a claim of Charles Crumpacker, now deceased, and First State Bank of Valparaiso, Indiana, Administrator de bonis non with the will annexed of his estate, upon notes alleged to have been given by the deceased to the said Charles Crumpacker in his lifetime, which claim in the amount of $2917.00 was filed in this estate on the 29th day

of August, 1922. In addition to the last named claim there is an unsatisfied claim of $200.00 filed by First Trust Company in the Estate in 1920. The Trust Company, so far as this administrator is able to ascertain, filed said claim as an act of liquidation and has since completed its liquidation and been discharged.

The Administrator further says that the claim of the said Charles Crumpacker was on the 31st day of August, 1922, transferred to the trial docket of this court where it was pending on April 26th, 1926, when the claimant appeared in person by counsel and dismissed the claim at his costs. Thereafter and on the 7th day of March, 1928, an order was entered in said civil action purporting to reinstate said claim. On February 18th, 1931, the claim was allowed by order of court in the sum of $4535.94. At the time of said allowance, as this Administrator is informed and believes, the Executrix originally appointed, Charlotte A. Crumpacker, was not living, and no successor executor or administrator had been appointed in her place.

Subsequently and on the 3rd day of January, 1934, the executor of the estate of Charles Crumpacker, deceased, filed an action on said claim direct in the Porter Superior Court, to which action the said Ohlfest, then Administrator of this estate, appeared, and in the month of April, 1934, the records show an order of the Porter Superior Court in said action allowing said claim in the sum of $4415.27.

Except as above stated there are no claims pending in this estate.

The inheritance tax has been ascertained, determined and paid.

By the terms of his will the deceased made bequests as follows: Fifty Dollars each to Edgar D. Crumpacker, Wade E. Crumpacker, John P. Crumpacker, Katherine Lewis, Florence Crumpacker and Lucile Casey, and bequests of One Hundred Dollars each to Mary W. Crumpacker and Cully A. Crumpacker, now Cully A. Collins. Certain of these legatees are deceased. The bequests are being paid as to those living and deposits of money made to pay such bequests for the use and benefit of the deceased legatees.

Under the terms of his will the deceased gave his widow, Charlotte A. Crumpacker, a life estate in his property and upon her death the remainder to his three sons, Owen L. Crumpacker, Frederick C. Crumpacker and Maurice E. Crumpacker. As heretofore stated, said Charlotte A. Crumpacker remained unmarried and died in June, 1926. The

son Maurice E. Crumpacker died intestate in July, 1927, leaving as his sole and only heirs at law his widow, Cully A. Crumpacker (by subsequent marriage now Cully A. Collins), and his sons, James Crumpacker, Edgar D. Crumpacker and Peter Crumpacker. The said Owen L. Crumpacker died unmarried and intestate on the 31st day of August, 1942, leaving as his sole and only heirs his brother, Frederick C. Crumpacker, and the three named sons of his deceased brother, Maurice E. Crumpacker, as a result of which the lands and real estate of which the said Edgar D. Crumpacker died seized are now owned by Frederick C. Crumpacker, Cully A. Collins, James Crumpacker, Edgar D. Crumpacker and Peter Crumpacker.

This estate, as the Administrator believes, is ready for final settlement, except for the disposition of said claim of the First State Bank of Valparaiso, Administrator with the will annexed of the Estate of the said Charles Crumpacker, deceased, and the Administrator recommends that this estate be closed with said claim pending upon the execution of a bond to secure the payment of said claim in the event it is established, as provided by law.

WHEREFORE, your Administrator de bonis non files this his final report in said estate, which he asks the court to consider and approve, and that the estate be declared fully and finally settled and determined and all matters therein adjudged and put at rest excepting only said claim of the Administrator of the Estate of the said Charles Crumpacker, deceased, for the payment of which claim the Administrator proposes to tender to the court a good and sufficient bond.

/s/ Englebert Zimmerman, Jr.
Administrator de bonis non
with the will annexed of the
Estate of Edgar D. Crumpacker,
deceased."

It affirmatively appears from the record and as set out in appellants' brief and the transcript of the record that the First Trust Company, the holder of the above claim for $200.00, had gone out of existence and had been liquidated and the discharge approved of a completed liquidation of such company.

The prayer was for final settlement and approval excepting as to the said claim of the bank as administrator of Charles Crumpacker, "for the payment of which claim the Administrator proposes to tender a good and sufficient bond." Said report also acknowledged the receipt from J. E. Ohlfest, the previous administrator *de bonis non* with the will annexed of the sum of $6,665.89.

Notice of the final settlement of said estate was duly published on February 7, 14 and 21, 1947. Exceptions to the said final report were filed by said First State Bank of Valparaiso, Administrator as aforesaid. However, the record shows that the claim of said bank, as such administrator, was paid by said Englebert Zimmerman, Administrator, and released by said bank, as such administrator, on December 5, 1951. There then remained in the hands of said administrator, Englebert Zimmerman, a small surplus of cash and there appeared no reason or obstacle preventing the due closing of said estate of Edgar D. Crumpacker, as prayed for in said final report of said administrator, Englebert Zimmerman.

Nevertheless, on March 9, 1956, some four years and three months after the payment of the only record claim against the estate of said Edgar D. Crumpacker, and nine years and one month after the filing of his "final report," said administrator, Englebert Zimmerman, Jr., filed a "Report of Sale" in said Cause No. 7210, being the action instituted by J. E. Ohlfest, as administrator, etc., on January 4, 1934, which report represented to the court that "pursuant to the order of court made and entered herein on the 11th day of January, 1938, he offered for sale" the said 83.5 acres of land here involved and above referred to. On the same day, to-wit: March 9, 1956, on the basis of his said "Report of Sale" said administrator, Englebert Zimmerman, Jr., obtained an order of the court approving the report and authorizing the execution and delivery of an administrator's deed conveying said real estate to appellees, Edward B. Howes, Leonard N. Conklin, Ormand

C. Julian, James W. Halley, Thomas S. Washburn, and Oliver Starr, Jr., for the sum of $14,300.00 cash.

In the meantime, and on November 22, 1948, said Frederick C. Crumpacker, the remaining living son of said Edgar D. Crumpacker, and the remaining residuary devisee under his last will, died. His title to said real estate derived from his father and his brother, Owen L. Crumpacker, and the said aforementioned partition decree, vested in his widow, the appellant, Mary W. Crumpacker.

The only publication of the intended sale of said real estate appearing in the record is the above referred to notice by J. E. Ohlfest, as administrator, etc., on April 28, and May 5th and 12th, 1938, of the offering thereof for sale on May 28, 1938, at ten o'clock A.M. of said day. Nor does it appear from the record that any of the persons with successive or after-acquired interests in and to said real estate were made parties to any of the proceedings for the sale of said real estate or that they, or any of them, were notified or advised in any way or manner of the intended or proposed sale of said real estate by the new administrator, Englebert Zimmerman, Jr., twenty-two years after the order authorizing J. E. Ohlfest, Administrator, etc., to sell the same and seventeen years and ten months after the publication by J. E. Ohlfest, Administrator, etc., that he would offer the real estate for sale in the law office of "Kelly & Ryan," Farmers State Bank Building, Valparaiso, Indiana, on May 28, 1938. The record does not reveal any report by the administrator as to where the sale of said real estate to said appellees took place; whether the law office of "Kelly & Ryan" was in existence on March 9, 1956, or was then still located in the Farmers State Bank Building; whether competitive bids for said real estate on March 9, 1956, were invited or received; nor for what unpaid obligations there was insufficient cash to pay or for what unpaid debts or obligations of the decedent it became necessary to sell the real estate to make assets for the payment thereof.

The Dune Woodlands, Inc., a corporation formed by the individual purchasers at the administrator's sale in 1956, and their grantors were made an additional party defendant on June 6, 1960, and by agreement it joined in the prior answer of the defendants and also filed a cross-complaint to quiet its title to the 83 acres on June 28, 1960. Appellants then filed answer to the cross-complaint of Dune Woodlands, Inc., so that the plaintiffs herein are cross-defendants to the cross-complaint by the defendant Dune Woodlands, Inc.

In considering the issues raised by appellants and cross-defendants' (appellants) motion for new trial and assignment of errors, we must take into consideration the existing statutes with reference to administrator's sales.

The order for the sale of the real estate in question was entered July 11, 1938. The administrator's sale and the administrator's deed in question on March 9, 1956, must be construed in the light of the controlling statutes in force and effect prior to the adoption and effective date of the present Probate Code.

Prior to the adoption of the present Probate Code the jurisdiction to sell the real estate of a decedent was derived from Burns' Indiana Annotated Statutes (1933), §§ 6-1107 through 6-1149, inclusive.

Burns' § 6-1107, *supra*, provides as follows:

"6-1107 (3179). When sale allowed.—If the personal estate of a decedent shall be insufficient for the payment of the liabilities thereof, the real estate of the deceased, if any, shall be sold to make assets for the payment of such liabilities."

Burns' § 6-1108 provides in part:

"6-1108 (3180). What liable to be sold.—The real estate liable to be sold for the payment of debts, when the personal estate shall be insufficient therefor, shall include:

First. All the real estate held or possessed by the deceased at the time of his death by legal or equitable title

(except such as was held upon a contract for the purchase of land), and all interests in real estate which would descend to his heirs, etc."

Burns' § 6-1113 specifies how a petition to sell real estate shall be entitled and what allegations it must contain. The petitioner is required to set forth a description of the real estate of the deceased liable to be made assets for the payment of his debts, the value thereof, the amount of the personal estate of the decedent, the amount of the claims filed and allowed against the estate, the amount of claims filed and pending against the estate, etc.

Burns' § 6-1117 provides:

"6-1117 (3189). Notice of petition.—Whenever an executor or administrator of any decedent's estate shall have filed in the proper court a petition for the purpose of procuring an order for the sale of real estate for the purpose of paying the debts of said decedent's estate, notice of the pendency of the petition and of the time and place of hearing, shall be served upon the defendants as in civil cases. The notice herein provided for shall be issued by the clerk of the court in which the administration of said estate is pending, and in case of notice by publication as provided in civil cases, said notice shall be given by publication in some newspaper in the county in which said estate is pending. All notices shall be attested by the signature of the clerk and the seal of said court. (Acts 1891, ch. 152, § 1, p. 367; 1956, ch. 100, § 1, p. 271.)"

Burns' § 6-1121 provides in pertinent part:

"6-1121 (3193). Hearing and orders.—Upon the hearing of such petition, witnesses may be compelled to attend, and depositions, taken under the usual regulations of law, may be read, and the parties to the petition may be examined under oath as in other cases. If, upon such hearing, the court shall find the material allegations of the petition to be true, it shall enter a decree, declaring the real estate liable to be sold to make assets for the payment of the debts and liabilities of the estate, and empowering the executor or administrator to sell so much thereof as may be found necessary to discharge said debts and liabilities. The petition shall remain pending on the docket until the real

estate, or so much as may be necessary, be sold for the payment of said debts and liabilities; and further sales may be ordered, from time to time, without further petition or notice, upon proof that sales already made are insufficient for that purpose. (Acts 1881, (Spec. Sess.), ch. 45, § 121, p. 423.)"

Burns' § 6-1126 authorizes the court to order real estate sold at private sale, and, in such case prescribe in the order the notice to be given of the sale. Burns' § 6-1128 requires the executor or administrator to file a bond.

Burns' § 6-1129 provides as follows:

"6-1129 (3201). Notice of sale.—In case of sale of real estate at public auction, the court shall prescribe the notice to be given of such sale, and the court shall so order; and the executor or administrator shall give notice of the time, place and terms of sale in the manner as prescribed and ordered by the court. If the real estate or any part thereof shall be ordered to be sold subject to any lien, such fact and the particulars of the lien shall be stated in the notice. (Acts 1881 (Spec. Sess.), ch. 45, § 130, p. 423; 1943, ch. 13, § 1, p. 23.)"

While the administrator's sale in question herein must be considered as governed by the probate statutes in force and effect prior to the present Probate Code, it is important to note certain provisions of the present Probate Code which should be taken into account in consideration of the questions presented in this cause.

Burns' 1953 Repl. § 6-102 provides in pertinent part:

"(a) The procedure herein prescribed shall govern all proceedings in probate brought after the effective date of the act; and also all further procedure in probate proceedings then pending, except to the extent that in the opinion of the Court their application in particular proceedings or parts thereof would not be feasible or would work injustice in which event the former procedure would apply."

"(b) No act done in any proceeding commenced before this code takes effect, and no accrued right, shall be impaired by its provisions. When a right is acquired, extinguished or barred upon the expiration of a prescribed

period of time which has commenced to run by the provisions of the law in force and effect at the time, such provision shall remain in force and is deemed a part of this code with respect to such right, and notwithstanding any of the provisions of this act, the person or persons who shall be entitled to take or receive any property, right, power or interest on the final settlement and distribution of any estate pending or any trust being administered at the time this act takes effect shall be determined, and his or their rights, powers and interest shall be governed by the statutes and applicable decisions in force and effect immediately prior to the taking effect of this act . . ."

It will be observed that the only authority under which the present administrator purported to act in making the sale of March 9, 1956, was by virtue of the jurisdiction invoked on January 4, 1934, by J. E. Ohlfest, administrator *de bonis non*, through the filing of the "Petition to Sell Real Estate" docketed as Porter Superior Court Cause No. 7210. No new or different procedures were undertaken after January 1, 1954, as authorized by the new Probate Code. The present administrator did not file a petition in Estate No. 258 of Edgar D. Crumpacker under Burns' 1953 Repl., § 7-911 nor was the real estate *"re-appraised under order of the court* within three (3) months preceding the sale or lease" as required by § 7-913. (our emphasis) The adoption of the new Probate Code did not impair any accrued rights nor did it create any new rights in the administrator over the real estate of the heirs other than to authorize a procedure which he did not undertake to follow. The sale in question, therefore, must be tested by the statutes in force and effect prior to January 1, 1954.

Cases in other jurisdictions are also helpful in consideration of the question as to the validity of the administrator's sale.

In *Wellman* v. *Lawrence* (1818), 15 Mass. 326, the Court held that a license to sell created by a sale order in favor of an administrator lapsed when not exercised within fifteen years. The Court stated at p. 328:

"On a fair construction of the statute, an administrator is bound to execute his authority within a reasonable time. It is but a naked authority, and should be strictly pursued. Heirs are interested, as well as creditors, in the speedy adjustment of estates; yet they have no means of compelling a settlement. All the provisions of the law on this subject show that expedition is required."

In the case of *Ricard* v. *Williams* (1822), 20 U.S. (7 Wheat.) 59, an administrator, acting under a Connecticut statute similar to Burns' State. 1933, § 6-1113 *et seq.*, undertook to sell real estate title to which had descended to the heirs 31 years prior to the sale. The administrator obtained an order of the Probate Court. The Court, by analogy to the statute of limitations governing rights of entry, held that the power to sell real estate under the statute was lost by a failure to exercise it within a reasonable period after the death of decedent. We quote at length from the opinion of Justice Story at p. 112, *et seq.*, in order to show the reasons for the rule established:

"The other question in the cause is of great importance, and if decided one way will probably put an end to further controversy. It has been very fully and ably argued at the bar, and does not, from anything before us, appear to have received a final adjudication in the courts of Connecticut. It must therefore be examined and decided upon principle. By the laws of Connecticut (as has already been stated) the real estate of the intestate is liable to be sold for the payment of debts, where there is a deficiency of personal estate. The administrator, by virtue of his general authority, has no right to meddle with the real estate; but derives this special authority from the order of the Court of Probates, which possesses jurisdiction to direct the sale, upon a proper application, and proof of the deficiency of the personal assets. This power of trust, call it which you please, when granted or ordered, is not understood to convey any estate to the administrator in the lands of the intestate. He derives simply an authority to sell from the Court, and upon the sale makes a conveyance to the purchaser; and the estate passes to the purchaser upon his entry into the land by operation of law, so that he is under the estate of the intestate . . .

Still, however, the question recurs, whether a power of sale, thus derived under the law, and not from the act of the

party, is to be construed as a perpetual lien on the land of which the intestate dies seized and capable of being called into life at any distance of time, and under any circumstances, whatever may be the mesne conveyances, disseisins, or descents, which may have taken place. If it be of such a nature, great public mischiefs must inevitably occur, and many innocent purchasers, fortified as their possession may be, by length of time, against all interests in the land, may yet be the victims of a secret lien, or power, which could not be foreseen or guarded against, and which may spring upon their titles when the original parties to the transactions are buried in the grave. *The principles of justice would seem to require, that the law should administer its benefits to those who are vigilant in exercising their rights, and not to those who sleep over them.* It is always in the power of creditors to compel an administration to be taken upon an estate by application to a court of probate; and if a next of kin decline the office, it is competent for the court to appoint any other suitable person. So that, if creditors do not choose to act, the loss or injury ought rather to fall on them rather than on those who are meritorious purchasers without the means or knowledge to guard them against great mistake. A power to sell the estate for payment of debts being created by the law, ought not be so construed as to work mischief against the intent of the law. *It ought to be exercised within a reasonable time after the death of the intestant; and gross neglect or delay on the part of creditors for an unreasonable time ought to be held to be a waiver or extinguishment of it* . . .

What, then, is to be deemed a reasonable time for the exercise of this power to sell? It has been argued that the case of such a power is within the purview of the statute of limitation of Connecticut; and if not, that the reasonable time for its exercise is to be fixed by analogy to that statute. The statute provides that no persons shall at any time thereafter, make entry into any lands or tenements, but within 15 years next after his right or title shall first descend or accrue to the same . . .

But we do not think it is a case clearly within the same equity as those which are governed by the statute of limitations; and that by analogy to the cases where a limitation has been applied to other rights and equities not within the statute, the reasonable time within which the power should be exercised, *ought to be limited to the same period which regulates right of entry*. It would be strange, indeed, that when the estate of the heirs in the land, which is but

a continuation of the estate of the intestate, is extinguished by the statute, the estate should still be considered as a subsisting estate of the intestate himself. That the administrator should possess a power over the property which the intestate could not possess if living and that a lien created by operation of law should have a more permanent duration of the first efficacy, than if created by the express act of the party. The convenience of mankind, the public policy of protecting innocent purchasers, and the repose of titles honestly acquired, require some limitation upon the powers of this nature, and we know of none more just and equitable than this, that when the right of entry to the land is gone, or the estate is gone by an adverse possession from those who held as heirs or devisees, the whole interest in the land, the power of the administrator to make sale of land for the payment of debts, is gone also." (our emphasis)

It seems clear that in the instant case the order for the sale of the real estate of January 11, 1938, did not and could not grant a *perpetual license to sell* the real estate under such order in favor of the successor administrator, Englebert Zimmerman, Jr. Title to the land owned by Edgar Crumpacker, deceased, passed to his heirs in 1920. The purported sale and title undertakes to divest such title which was acquired 36 years before. All debts were paid by December 5, 1951. Under these circumstances we are constrained to hold that the *power to sell elapsed* under such circumstances.

As stated in Freeman, *Void Judicial Sales,* § 9, p. 41, (4th Ed. 1902) :

"Except where authorized to do so by a will, or by some statute, neither an administrator, an executor, nor a guardian can sell real estate without a license or order of sale from the court. A sale made without such license or order of court is not a mere error or irregularity which must be objected to by some proceeding in the court where the license ought to have been sought and granted; and, which, if not so objected to, is waived or ratified. It is a proceeding without any legal support. A conveyance made in pursuance of it has no force whatever. It may be shown to be void when collaterally attacked. In fact, no attack,

collateral or otherwise, need be made. The claimant under the sale could not show a *prima facie* case."

The applicable statutes of this state designate the contingencies in which the real estate of a deceased or incompetent person may be ordered to be sold. There is no power or license granted by the statute for a perpetual and continuing authority to sell real estate of a decedent and probate law being governed by statute, such statutes must be followed strictly in the making of administrator's sales. The statutes prescribe the limit of the judicial authority. Action beyond this limit cannot be designated as being irregular or under any doctrine of general unlimited authority, but it is beyond the power of the court and the administrator to do by reason of lack of judicial license or power therefor. If the reasons for the sale of a decedent's real estate designated by statute are too few, relief must be sought from the legislature and not by judicial construction.

The administrator at the time of the sale on March 9, 1956, Englebert Zimmerman, Jr., took no steps or proceedings under the new Probate Code. No petition was filed in said estate cause for the sale of the real estate under the provisions of § 7-911, *supra*, nor was there any order of the Court authorizing or ordering notice of any sales after January 11, 1938; nor was any petition filed with the Court to continue the administration under the old code.

The administrator's Report of Sale sets out that the 83.5 acres were offered for sale on March 9, 1956,

"pursuant to the order of court made and entered herein on the 11th day of January, 1938, in the Porter Superior Court."

It also appears affirmatively by the record that none of the appellants were notified of the proposed sale. Testimony of the administrator, Englebert Zimmerman, Jr., discloses that none of the then successor heirs with after acquired interests

were notified of either the intention to sell or the existence of the sale until May 5, 1956, which was almost two months after the sale had taken place.

By statute notice of the sale is mandatory whether the sale is public or private. J. E. Ohlfest, who was acting as administrator at the time the sale order was made, was ordered ■ to give three weeks' notice of the time, terms and place of sale by publication in a daily newspaper of general circulation printed and published in Porter County, Indiana, by three publications therein. The notice by such administrator provided for the sale in the law office of Kelly & Ryan on May 28, 1938, and from day to day thereafter until sold, but it seems apparent that such published notice was wholly insufficient as a notice of sale by a different administrator, at a different place, almost 18 years after its publication. Under the guiding principles of law it would appear that the previous published notice was wholly insufficient as a notice of sale by a different administrator, at a different place, almost eighteen (18) years after its publication. Under such circumstances we are compelled to the conclusion that the sale of March 9, 1956, by Englebert Zimmerman, Jr. was made without proper notice, without compliance with such sale order and the reasonable construction of applicable statutes governing administrator's sales.

We must also take into account the fact that the said J. E. Ohlfest, the prior administrator, was authorized and directed by the order of court for such sale on January 11, 1938, ■ *to sell only a forty (40) acre tract in the Northwest Quarter of Section 22, Township 37 North, Range 6 West,* with certain specified exceptions, so this order could not have been authority for the sale of the other real estate order consisting of 43.5 acres in the Northeast Quarter of Section 22.

The appellants Cully A. Collins, James Crumpacker, Edgar D. Crumpacker and Mary W. Crumpacker's predecessor in in-

terest, Frederick C. Crumpacker, had the remaining undivided one-half in said 43.5 acres set off to them by the partition taken of June 21, 1946, in the Porter Circuit Court, eight years after the sale was ordered, and their titles thereto became vested therein after the death of Owen L. Crumpacker, on August 31, 1942, and the death of Frederick C. Crumpacker on November 22, 1948.

> "Unless an exception is created by statute, as in the case of property fraudulently transferred by the decedent, it may saftely be affirmed that an executor's or administrator's sale cannot transfer any title to property not vested in the decedent at the time of his death." Freeman, *Void Judicial Sales, supra,* § 9a, p. 44; *Flenner et al.* v. *The Travellers Insurance Company* (1883), 89 Ind. 164.

Therefore, under the law the Porter Superior Court in Cause No. 7210 was without judicial power to approve a sale of after acquired interests of the heirs in real estate previously in 1938 ordered sold, neither could a confirmation order later enlarge the conveyance by the administrator of an interest which the decedent did not own at the time of his death. *Bell* v. *Shaffer* (1900), 154 Ind. 413, 421, 56 N. E. 217.

In the foregoing case the Supreme Court held that it is impossible to sanction or uphold an attempt to convert a petition for the sale of real estate to pay the general creditors to enlarge the sale of two-thirds of a lot so as to include the entire premises in cases where the appellee heirs did not acquire the title to one-third of the lot in question until the widow died

> "and, of course could maintain no action for its recovery, or for partition previous to that event."

The text authority, Freeman, *supra,* on the subject of Void Executions and Judicial and Probate Sales, at p. 87, § 2, states as follows:

> "Probate sales, we are sorry to say, are generally viewed with extreme suspicion. Though absolutely essential to the administration of justice, and forming a portion of almost every chain of title, they are too often subjected to tests far more trying than those applied to other judicial sales. Mere

irregularities of proceeding have, even after the proceedings had been formally approved by the court, often resulted in the overthrow of the purchaser's title. In fact, in some courts, the spirit manifested toward probate sales has been scarcely less hostile than that which has made tax sales the most precarious of all the methods of acquiring title."

It may be suggested that the reason for this spirit is not far to seek. The loose and slip-shod methods of many courts of probate jurisdiction in cases where the rights and titles of heirs are involved cannot receive the approval of appellate tribunals when they come under review. While applications for the sale of real estate are nominally adversary proceedings, they are, in fact, in most cases, *ex parte*, the administrator looking after, or being expected to look after, as well the interests of the widow and heirs as the rights of creditors. The widow and adult heirs usually make default, and the minors are represented by a guardian *ad litem*, who appears *pro forma* only. Under such circumstances, to permit the probate court to play fast and loose with petitions and orders, without regard to any rules of law, or orderly procedure, is to encourage a dangerous laxity in practice, and to trifle with the important rights of property.

The principal issue in this cause which this court must determine is the qeustion of the validity of the administrator's sale of March 9, 1956, and whether the defendants and their successor, Dune Woodlands, Inc., acquired title to the real estate in question by the administrator's deed executed and approved by the court March 9, 1956.

As indicated in this opinion, and as pointed out by the appellant, 43.5 acres of the real estate in question was acquired by the appellants by partition decree dated June 21, 1946, and could not have been, in any way, included in the order for the sale of real estate of January 11, 1938, in cause No. 7210. Furthermore, the record shows that 83.5 acres, including the original 40 acres contained in the sale order of January 11, 1938, as well as the after-acquired interests in and to the 43.5

acres acquired in the partition decree of June 11, 1946, were sold on March 9, 1956, following an order of sale which was entered pursuant to the order of sale of the 11th day of January, 1938, in cause No. 7210. The approved report of sale showed that the real estate was sold and deed executed, tendered to and approved by the court and the sale transaction concluded on said date, pursuant to the previous order of sale entered on the 11th day of January, 1938, in cause No. 7210. For some unknown reason, the Administrator, Zimmerman, *de bonis non*, filed a further and later petition of May 4, 1956, upon which petition an order of court was entered thereon on May 4, 1956, after the proceedings had already been had and the real estate sold and the report of sale approved on March 9, 1956. This later petition of May 4, 1956, contained, *inter alia,* the following language, "It is the further opinion of this administrator that the best interests of said estate will be served by permitting him, as such administrator, to proceed to make sale of all the remaining real estate belonging to said decedent's estate as provided for in cause No. 7210 of this court." At the time of the filing of this petition, the 83.5 acres was not remaining and unsold, but had been previously sold on March 9, 1956.

It appears that the Administrator attempted, in his petition of May 4, 1956, to secure an order for the sale of the same real estate which had already been sold two months prior thereto, which later petition could add nothing to the previous void sale of March 9, 1956, and the record shows that no further proceedings were had upon the petition and order of May 4, 1956, as to the sale of the 83.5 acres which had already been sold previously on March 9, 1956.

At common law the real estate of a decedent is not subject to his debts nor is the personal representative authorized to sell in the absence of some testamentary provision authorizing him to do so. 34 C.J.S., § 536, p. 472. There is no inherent jurisdiction in a court to sell a decedent's

real estate, but its jurisdiction for this purpose is derived from statutes. These statutes designate the special circumstances under which a sale may be authorized and are strictly construed. In 21 Am. Jur., Executors and Administrators, § 583, p. 710, it is said:

"In the absence of a will, statutory enactments are the exclusive source of the power of an executor or administrator to sell real estate, as well as of the jurisdiction of the probate court in reference to proceedings for such sale. In this connection, a court of probate exercises a special statutory power, and not one that pertains to the ordinary settlement of the estate, and *it is frequently declared that the statute must be followed strictly in all material respects, or the sale will be held to be void. In other words, strict compliance with statutory prerequisites is deemed to be jurisdictional as regards both the person and the res,* and it has been held that a court has no power to order the sale until the jurisdictional facts prescribed by law have been ascertained of record." (our emphasis)

See *Citizens Street Railway Company et al.* v. *Robbins, Administrator* (1891), 128 Ind. 449, 26 N. E. 116, and *Coats* v. *Veedersburg State Bank* (1941), 219 Ind. 675, 38 N. E. 2d 243, in which the Supreme Court stated at p. 681 of the official report:

"By virtue of these principles, it has been held that an administrator has no power over the lands of a decedent, except those powers given by statute. *Hankins, Admr.* v. *Kimball* (1877), 57 Ind. 42. *Statutes enlarging the powers of an administrator so as to give him authority to sell real estate, being in derogation of the common law, must therefore be strictly construed. Tippecanoe Loan, etc., Co.* v. *Carr* (1907), 40 Ind. App. 125, 78 N. E. 1043." (our emphasis)

The administrator's sale of March 9, 1956, included real estate not included in the sale order entered in Cause No. 7210 of the Porter Superior Court in January, 1938. Also, it appears that the debts of the decedent had been paid on or prior to December 5, 1951, and, therefore, it may be rightfully said that no petition to sell real estate was actually or properly

pending on March 9, 1956, within the provisions of Burns' § 6-1121, *supra*.

The administrator, Englebert Zimmerman, Jr., following the sale of such real estate, filed a current report "in settlement," dated September 24, 1959, in which he charged himself with the receipt of the sum of $6,665.89 from J. E. Ohlfest, prior administrator, and the sum of $14,300.00, realized from the purported administrator's sale of March 9, 1956, making a total sum of $20,965.89, and similarly showed disbursements for taxes, bond premiums, advances, appraisal fees, attorneys' fees and other items as set forth in such current report in settlement.

There is no question but the undisputable record shows that the sale made on March 9, 1956, was made pursuant to the Order of the Court made and entered on the 11th day of January, 1938, in the Porter Superior Court, for such sale. This Order of Court *only included 40 acres of land.*

The items paid out by the administrator, as shown by his current report of September 24, 1959, were not items which were included within the petition and order of January 11, 1938. The record shows these items were paid from the proceeds of the sale of the real estate in question as well as other moneys turned over by Ohlfest, the previous administrator.

While these payments inured to the benefit of the heirs, such record *does not render a void sale* made without compliance with the law *a valid sale.*

We are convinced that upon the record here submitted, the administrator's sale of March 9, 1956, was void and that the administrator's deed conveyed no title to the appellees.

Since it appears from the record in this cause that the proceeds of the administrator's sale in the amount of $14,300.00 were received for the benefit of the heirs in the estate, the appellant, Dune Woodlands, Inc., therefore, has an equitable lien against the real estate here involved and the right of subrogation of said amount. (See 21 Am. Jur.,

Executors and Administrators, § 676, *et seq*. See also *Duncan, Administrator* v. *Gainey, et al*. (1886), 108 Ind. 579, 584, 9 N. E. 470.

One of the principal contentions of the appellees is that the appellants were estopped to deny the validity of the sale by the acceptance of benefits therefrom. A consideration of the cases cited by the appellees, *Axton, et al*. v. *Carter, et al*. (1895), 141 Ind. 672, 39 N. E. 546; *Myers et al*. v. *Boyd et al*. (1895), 144 Ind. 496, 43 N. E. 567; and *Hampton* v. *Murphy* (1909), 45 Ind. App. 513, 86 N. E. 436, *do not involve void judicial sales*. In this cause it appears that the appellees did not have notice of the sale or that they took any steps when they learned of the sale which would or might *constitute estoppel or ratification*.

For the reasons given herein, the judgment of the lower court is hereby reversed and this cause is remanded with instructions to grant appellants' motion for a new trial. The facts of this case are mainly established by evidence which, upon another trial, would command the conclusion we have reached here. Consequently, it seems unnecessary and futile to subject the parties to the expense and delay of another trial after the present long delay in this cause.

Therefore, the trial court is hereby ordered and instructed to enter finding and judgment quieting appellants' title to the real estate herein and to find against the appellee, Dune Woodlands, Inc., upon its cross-complaint.

The trial court is hereby further ordered and directed to enter judgment for possession of the real estate in question in favor of appellants herein upon the remittitur and payment of $14,300.00 to discharge the lien of $14,300.00 to Dune Woodlands, Inc. as declared in this court's judgment and opinion herein.

The court having heretofore held the appellees' motion to dismiss in abeyance until a determination of this cause on its merits now overrules the appellees' motion to dismiss.

We now therefore hold that the judgment of the trial court should be reversed.

Judgment reversed.

Mote, P. J., Bierly and Smith, JJ., concur.

NOTE.—Reported in 222 N. E. 2d 296.